# Louisville & Nashville Railroad Co. *v.* Landers.

## *Action against Railroad as Common Carrier for Injuries to Cattle.*

1. *Claim against common carrier; assignable.*—A claim against a common carrier for the alleged breach of a contract of affreightment in not delivering freight uninjured, is a claim for damages growing out of the alleged breach of a contract, and is, therefore, assignable without regard to the statute authorizing assignments in right of claims against railroad companies for injuries to property (Code, § 877).

2. *Common carrier; stipulation in bill of lading limiting carrier's liability binding.*—The stipulation in a bill of lading, in consideration of reduced rates of freight, by which a shipper limits a carrier's liability to damages resulting from the negligence of the carrier or its agent, is founded upon a sufficient consideration and is a binding obligation between the shipper and carrier.

3. *Action against common carrier; admissibility of bill of lading containing special stipulations limiting liability.*—In an action against a common carrier for injuries to freight, where the complaint is in the form prescribed in the Code for a suit against a common carrier on a bill of lading, a bill of lading containing special stipulations limiting the carrier's common law liability is admissible in evidence, and the introduction of such bill of lading does not constitute a fatal variance between the complaint and the proof. (*Nashville, Chattanooga & St. Louis R. Co. v. Parker*, 123 Ala. 683, so far as it asserts a contrary principle, overruled).

4. *Action against common carrier; admissibility of evidence.*—In an action against a common carrier to recover damages for injuries to cattle, alleged to have been sustained while being transported by the defendant, a witness who is shown to have been a cattle dealer all of his life and to have repeatedly shipped cattle over railroads and especially over the defendant's road between the same points as those between which the plaintiff's cattle were shipped, and further, that he was familiar

[Louisville & Nashville Railroad Co. v. Landers.]

with loading and transporting cattle, is competent to testify as to the value of cattle, and as to whether or not they could be loaded and transported with safety without partitions in the cars, and as to what would be a reasonabl time for transporting the cattle between the points of consignment and destination as shown by the plaintiff's testimony.

5. *Same; same.*—In such a case, it is not competent for such witness to testify as to what, in his judgment, would have caused the injury to cattle if they had been loaded and shipped as the plaintiff's evidence tended to show was the manner of shipment of his cattle; such testimony being a conclusion of the witness as to the facts in issue, which it was the province of the jury alone to determine.

6. *Same; same.*—In such a case, the conversations between the plaintiff and the defendant's agent relative to the transportation of the cattle and during the course of the transportation of the same, are admissible in evidence as part of the *res gestae.*

7. *Common carrier; construction of provision of bill of lading.* Where a bill of lading contains a special stipulation which requires the shipper at the point of destination and before the removal of the cattle at the place of delivery, and before their mingling with the other cattle, to give written notice to the carrier of any claim of damages as a condition precedent to any right of recovery for injury to said cattle during their transportation, such stipulation is not to be strictly construed against the shipper, and the shipper has a reasonable time after the removal of the cattle from the place of delivery, in case the injury is not then discovered, in which to give such notice; and the fact that he has given the written notice required before the removal of the cattle from the place of delivery does not preclude the shipper from the right of giving additional notice within a reasonable time of a claim for other injuries, which had not been discovered and which could not have been discovered at the time of the removal by ordinary diligence.

8. *Action against common carrier; notice required to be given; charge of court to jury.*—In an action against a common carrier to recover damages for injuries to cattle alleged to have been caused by the negligence of the defendant during the transportation of such cattle, where the bill of lading contained a special stipulation requiring notice of injury before the removal of cattle at the place of delivery, and before their mingling with the other cattle, and it is shown that the only notice given to the defendant pursuant to such stipulation was

for cattle which had died before the removal of the cattle from the place of destination, the plaintiff is not entitled to recover for cattle which died after their removal; and charges which instruct the jury to this effect should be given at the request of the defendant.

APPEAL from the Circuit Court of Calhoun.

Tried before the Hon. D. C. BLACKWELL, Special Judge

This was an action brought by the appellee, J. C. Landers, against the Louisville & Nashville Railroad Company as a common carrier, to recover damages for the failure to deliver cattle which had been shipped over the defendant's road and for injury to cattle while in transportation on the defendant's road. The complaint contained six counts; each of the counts being in the statutory form, for suit against a common carrier on a bill of lading. The defendant pleaded the general issue and by special pleas set up the violation of special stipulations which were agreed to by the shipper in the bill of lading issued by the defendant.

The plaintiff introduced evidence tending to show that a number of cattle which had been shipped over the defendant's railroad were injured during transportation and that said injuries were caused by negligence on the part of the defendant or its employees. The defendant introduced evidence tending to show that the injuries caused to the cattle, for which the suit was brought, were occasioned by reason of the cattle being crowded in cars without reference to their size or weight, and further because there were no partitions made by the plaintiff in the cars as he agreed to do. The facts of the case relating to the rulings of the trial court on the evidence reviewed on the present appeal are sufficiently stated in the opinion.

The court at the request of the plaintiff gave to the jury the following written charges: (1.) "The court charges the jury that in order to entitle the plaintiff to recover, he need only show delivery to the railroad in good condition—unreasonable delay in transportation—and delivery in bad condition, and if the plaintiff has shown these facts the jury will find the issue in favor of the plaintiff unless the evidence also satisfy the jury

[Louisville & Nashville Railroad Co. v. Landers.]

that the railroad company was not guilty of negligence." (2.) "If the jury believe that the defendant negligently delayed to ship the cattle from Montgomery, or negligently permitted them to stand upon the track for several hours at Calera, and that the cattle were injured thereby, then the jury will find the issue in favor of the plaintiff." (3.) "If the cattle were in good condition when delivered to the defendant railroad company at Montgomery, and there was an unreasonable delay in transportation, and the cattle after such delay were delivered in bad condition, the presumption is that the injury resulted from the negligence of defendant." (4.) "If the defendant failed to deliver the cattle in a safe condition within a reasonable time the presumption of negligence on the part of the defendant arises, and the burden of proof is shifted to the defendant to excuse itself from negligence, and if this burden has not been discharged the jury must find the issue in favor of the plaintiff."

The defendant separately excepted to the giving of each of these charges, and also separately excepted to the court's refusal to give each of the following charges requested by it: (1.) "I charge you, gentlemen of the jury, that you can not find for the plaintiff for any damage occasioned by the death of any of these stock after the same had left Attalla, Ala., if you believe from the evidence that no notice was given the defendant or its agent at Attalla, or elsewhere, except the notice testified by J. C. Landers and Judge Pelham." (2.) "I charge you, gentlemen of the jury, that the undisputed evidence in this case shows that the plaintiff only gave notice to the defendant of the loss and damage of fourteen head of cattle, and you can not find for the plaintiff for any damage on account of the loss or death of any other cattle after the same left Attalla, Ala." (3.) "I charge you, gentlemen of the jury, that unless the evidence shows that the plaintiff gave notice of the damage to the cattle, to the defendant or its agent, before the cattle were taken from the cars at Attalla, and before leaving the yard of the company, then you can not find for the plaintiff."

[Louisville & Nashville Railroad Co. v. Landers.]

The other charges requested by the defendant, to the refusal to give each of which it separately excepted, were the general affirmative charge upon the whole of the complaint and the general affirmative charge in favor of the defendant upon each count of the complaint separately.

There were verdict and judgment for the plaintiff. The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

THOS. G. & CHAS. P. JONES, for appellant.—The general affirmative charge requested by the defendant should have been given. The contract introduced in evidence was a special contract, materially varying the common law liability of appellant. It was error not to direct a verdict for the defendant.—*N. C. & St. L. Ry. Co. v. Parker*, 27 So. Rep. 323.

For another reason, the general affirmative charge should have been given for the defendant. The plaintiff sought to recover as transferee of a claim for injuries to property under the statute.—Code, § 877. That statute is clearly unconstitutional.

The statute attempts an arbitrary and invidious class distinction against railroad companies and none others. *Railroad Co. v. Morris*, 65 Ala. 200; *Smith v. L. & N. R. R. Co.*, 75 Ala. 451.

It deprives the railroad company of the equal protection of the law.—*County of San Mateo v. R. R.*, 8 Am. & Eng. R. R. Cases, 1, 11; *Smith v. L. & N. R. R. Co.*, 75 Ala. 451.

The other charges requested by the defendant should have been given.—*L. & N. R. R. Co. v. Marbury L. Co.*, 131 Ala.; *West. R. of Ala. v. Harwell*, 97 Ala. 341; *A. G. S. R. R. Co. v. Grabfelder*, 83 Ala. 206; *S. & N. R. R. Co. v. Wilson*, 78 Ala. 587.

WILLIAM P. ACKER, *contra*.—The testimony of the witness Clarkson was admissible in evidence.—*West. R. R. Co. v. Lazarus*, 88 Ala. 453; *A. G. S. R. R. Co. v.*

*Moody,* 92 Ala. 279; *Phoenix Ins. Co. v. Copeland,* 86 Ala. 551; *Miller v. Smith,* 112 Mass. 470; 12 Amer. & Eng. Ency. of Law (2d ed.), 460, 476; *Moreland v. Mitchell,* 50 Iowa 394; *Donnelly v. Fitch,* 136 Mass 558.

The cause of action in this case was assignable.—*Smith v. N. Y. & N. H. R. R.,* 28 Barb. 605; *Watson v. Hoosac Tunnel Co.,* 13 Mo. App. 263; *Everett v. C. I. R. R. Co.,* 73 Iowa 442; 35 N. W. Rep. 609; *Merrill v. Grinnell,* 30 N. Y. 594; *Tyler v. Ricamore,* 87 Va. 466, 12 S. E. Rep. 799; *Norfolk & W. R. R. v. Read,* 12 S. E. Rep. 395; 22 Barb. 110; 13 Amer. & Eng. R. R. Cas. 599.

The stipulation limiting the liabilty of the common carrier was a binding obligation between the shipper the carrier.—*Railroad Co. v. Williams,* 31 S. W. Rep. 556; *Ormsby v. R. R. Co.,* 2 McCrary (U. S.) 48; 5 Amer. & Eng. Ency. of Law (2d ed.), 454, *et seq.*

The charges given at the request of the plaintiff were unobjectionable.—*R. & D. R. R. Co. v. Trousdale,* 99 Ala. 389.

DOWDELL, J.—The complaint in this case is in the prescribed form of the Code, No. 15, page 946, for suit against a common carrier on a bill of lading. There are six counts, and in the four last, the plaintiff claims as assignee. A demurrer was interposed to the complaint, which was overruled, but the assignment relating to this ruling, is expressly waived by the appellant. The first contention of counsel in argument for appellant, is, that the subject-matter of the suit is a *chose in action,* of which there can be no valid assignment; the insistence being that section 877 of the Code, authorizing the assignment in writing of claims against railroad companies for injuries to property, and suits thereon in the name of the assignee, is an unjust discrimination against railroad corporations as a class, and violative of section 12, Art. IV of the constitution of 1875. There is no merit in this contention, since the *chose in action* here assigned is a claim for damages growing out of the alleged breach of a contract, and the action is in form *ex*

*contractu.* There can, we think, be no doubt of the assignability of such a claim apart from the statute. The right of the plaintiff to sue in his own name on the claims assigned is not raised in the pleadings, and on the case as presented to the jury was not involved in any of the rulings on the charges.

The property transported in the present case consisted of live stock—three carloads of cattle—and the bill of lading contained a special contract between the shipper and the carrier limiting the latter's liability to damages resulting only from negligence of itself or its agents. Special contracts of this character have been upheld by this court as reasonable and binding between the shipper and carrier.—*Western Railway of Ala. v. Harwell,* 97 Ala. 341, s. c. 91 Ala. 340.

In *N. C. & St. L. R. Co. v. Parker,* 123 Ala. 683, it was held, that where the action on a bill of lading was in the form prescribed in the Code, it was a suit upon the common law liability of the carrier, and that a bill of lading containing special stipulations, limiting such common law liability, when introduced in evidence, constituted a fatal variance between the complaint and the proof. We feel constrained now to depart from this holding. The fact that a bill of lading contains special stipulations exempting the common carrier from a part of its common law liability, makes it none the less a bill of lading. The prescribed form in the Code is, in general terms, for suits "on a bill of lading of a common carrier," and we think it is sufficiently broad to cover bills of lading containing special stipulations.

There are a number of assignments of error based on the rulings of the court in the admission of evidence. We will notice only those insisted on in argument. The witness Clarkson, sworn and examined on behalf of the plaintiff, was permitted against the defendant's objection to testify as to the value of the cattle, and whether they could be loaded and transported with safety without partitions in the cars in which they were placed, and also as to what would be a reasonable time for transporting them from Montgomery to Attalla, Ala.,

those being the places of receiving and delivery. This witness testified that he had been a dealer in cattle all of his life, buying, selling, and shipping them on railroads. That he had bought cattle several times within the year of the shipment of the cattle in question, in and around Montgomery, that he knew the market value at Montgomery at the time of the shipment of plaintiff's cattle. That he had shipped cattle several times over defendant's road from Montgomery to Gadsden, a point within five miles of Attalla, was familiar with loading and transporting cattle on railroads. This testimony of the witness, we think, very clearly qualified him to testify as an expert witness, and as the evidence objected to came within the rule of expert evidence, and other conditions as a predicate having been shown for the admission of expert testimony, the rulings of the trial court were free from error.

Exceptions were taken and reserved to the admission in evidence of conversations between the plaintiff and defendant's agents relative to the transportation of the cattle, and in the course of the transportation of the same. These conversations were admissible as a part of the *res gestae*, and the rulings of the court were free from error in this respect.

The plaintiff was permitted over the objection of the defendant to ask the witness Clarkson, the following question: "If these cattle had been loaded at Montgomery at three or four o'clock p. m., switched in the yard for two or three hours, unloaded, reloaded about nine or ten o'clock next morning, carried to Calera about twelve o'clock, side-tracked there until ten or twelve o'clock at night, and then reached Attalla at three or four p. m. next day in the condition that you saw them, with a number dead, what, in your judgment, caused the injury?" To which the witness answered: "It was caused by the delay in shipment." Motion was made to exclude the answer, which was overruled by the court, and to which action of the court in allowing the question and overruling the motion to exclude, the defendant duly excepted. The court erred in its ruling. The question

called for evidence without the limit of expert testimony. It called for a conclusion of the witness as to a fact in issue, and which it was the province of the jury alone to determine, and the answer of the witness was a clear invasion of this province of the jury.

There was a provision in the special contract of affreightment of cattle, which required the plaintiff at the point of destination, and before the removal of the cattle from the place of delivery, and before their mingling with other cattle, to give written notice to the defendant of any claim of damages, as a prerequisite to any right of recovery. While this provision of the contract has been held to be a reasonable one, especially where the owner or his agent accompanies the stock, or agrees to do so, it is also said that such stipulation is not to be strictly construed. "The object is to prevent fraud on the carrier. When the shipper does not discover, and by ordinary diligence could not have discovered, the injury and its extent, before the animals are removed, notice thereof within such reasonably short time after their removal as effectually secures the carrier from fraud, is a substantial and sufficient compliance with the condition."—*Western Railway of Ala. v. Harwell, supra,* and authorities there cited. The fact of having given written notice before removal of the animals from the place of delivery, would not preclude the plaintiff from the right of giving additional notice of claim for other injuries which had not been discovered, and which could not have been discovered at the time of removal by ordinary diligence. But notice of such other injuries would be required within a reasonable time after discovery, to entitle plaintiff to recover damages for the same. To hold otherwise would be to impair, if not destroy, the effect of the stipulation in the contract as to such notice.

There was evidence tending to show that some of the cattle died after they had been removed from Attalla, the point of delivery. The notice, and only notice, given to the defendant or its agent pursuant to the stipulations contained in the bill of lading was for cattle

[Shelby Iron Co. v. Ridley.]

which had died before such removal. On this phase of the evidence the court erred in refusing written charges requested by the defendant to the effect that the plaintiff could not recover for cattle that died after their removal from Attalla.

We discover no error in the rulings of the court on other charges refused to the defendant, nor in the rulings on those given for the plaintiff.

For the errors pointed out, the judgment will be reversed and the cause remanded.

TYSON, J., dissenting.