# A. G. S. Ry. Co. v. McCleskey.

## Damages for Failure to Deliver Goods.

(Decided April 29, 1909. 49 South. 433.)

1. *Commerce; Intrastate Commerce; Regulation; Contract.*— Where the contract of shipment of goods is made within the state and is to be wholly performed within the state, the decisions and opinions of the interstate commerce commissions or the acts of congress upon which they are based have no binding force in determining the effect of state statutes on the contract.

2. *Carriers; Goods; Limiting Liability.*—The Commodity Act (General Acts 1907, p. 209, and General Acts 1 S. S., p. 125) does not operate to validate provisions of bills of lading exempting carriers from liability for loss of goods, but the law remains as before the enactment of those statutes.

APPEAL from Bessemer City Court.

Heard before Hon. WILLIAM JACKSON.

[A. G. S. Ry. Co. v. McCleskey.]

Action by J. M. McCleskey against the Alabama Great Southern Railway Company for loss of goods and damage to goods while being shipped over its lines. Judgment for plaintiff and defendant appeals. Affirmed.

A. G. & E. D. SMITH, for appellant.—Counsel insist that the act known as the 110 Commodity Act, passed the general assembly in 1907, and the act of the 1st special session, had. the effect to validate bills of lading limiting the liability of the railroad to the amount fixed in the bill of lading, and that if this limitation is valid, it is binding on the plaintiff although he did not read the bill of lading.—*Jones v. C. S. & M. R. R. Co.*, 89 Ala. 376. The railroad company must stand on the contract of shipment made for it by law, and not even mistake on the part of the railroad company can alter this contract.—119 Ala. 539; 158 U. S. 98.

PINKNEY SCOTT, for appellee.—The bill of lading as to the liability clause thereof is not binding, and was not rendered so by the acts of the legislature of 1907. No excuse was offered for a failure to deliver the goods, and a carrier cannot limit its liability for negligence —*A. G. S. v. Little*, 71 Ala. 611; *Mouton v. L. & N. R. R. Co.*, 128 Ala. 537.

MAYFIELD, J.—This is · an action   by a   shipper against a common carrier for failure to deliver freight —one trunk and contents—which was received by the carrier at Valley Head, to be delivered by it at Bessemer, Ala., for a reward.  By agreement the case was tried by the court without a jury on an agreed statement of facts, under the general issues, either party to have any advantage to which he might be entitled had such matter been properly and specially pleaded.  The agreed

SUPREME COURT [Vol.

[A. G. S. Ry. Co. v. McCleskey.]

statement of facts is as follows: "That the defendant
is a common carrier with its lines running from Valley
Head, Ala., to Bessemer; that plaintiff on the 3rd day
of December, 1907, shipped certain goods from Valley
Head to Bessemer, prepaying the amount of $9.60, the
goods being set out on the bill of lading hereto attach-
ed, marked 'Exhibit A,' and made a part of this agree-
ment; that said goods consisted of household goods and
old furniture, and the value was limited to $5 per 100
pounds in case of total loss, as shown on said bill of
lading, and that the said goods were packed and each
article tagged or marked; that the said $9.60 was the
rate provided by the classifications of the defendant,
the defendant having provided by its classifications a
higher rate for such goods where the value of the same
is not limited to $5 per 100 pounds in case of total loss;
that defendant's rates were posted and kept in its depot
at Valley Head as provided by law; that plaintiff did
not examine the same nor ask to examine the same; that
all of said goods were delivered except the trunk and its
contents; that the weight of the said trunk and con-
tents was, to wit, 150 pounds, and that the said trunk
and contents was a total loss; that the actual value of
said trunk and contents was eighty ($80) dollars, in-
cluding damage to rocking chair, it being claimed by the
plaintiff that he should have and recover in this action
$80, and it being claimed by the defendant that the
plaintiff should only have and recover in this action
$7.50 or at most $10; that the bill of lading hereto at-
tached and referred to was the bill of lading under
which the said goods were shipped; that, when the
plaintiff applied for the shipment of his household
goods over the defendant's line from said Valley Head
to Bessemer, agent for the defendant stated only the
rate of $9.60 on the shipment, issued to the plaintiff

the bill of lading hereto attached, and at the time writ-
ten as here appears, but did not call plaintiff's atten-
tion to the words, 'Val. Rel.,' '$5.00 cwt.,' but simply
handed the same said bill of lading to the plaintiff af-
ter receiving the household goods, and plaintiff having
paid the freight as stated to him, and thereafter plain-
tiff presented the bill of lading for his household goods
to the agent of the defendant at Bessemer, and went in
the car where he had packed them at Valley Head, and
found one rocking chair broken all up, so that the same
was a total loss, and the trunk and contents missing
from the car, which chair, trunk, and contents were
worth $80." The trial resulted in a judgment for plain-
tiff for $80, from which the defendant appeals.

But one insistence is urged by the appellant. It in-
sists that this contract of shipment was made under the
recent act of the legislature known as the "Commodity
Act" (Gen. Acts 1907, p. 209), and under and by the
subsequent act passed at the special session relating
to the same subject (Gen. Acts Sp. Sess. 1907, p. 125),
and that the object as well as the effect of these acts was
to validate contracts as to shipments made thereunder,
which would not otherwise be valid; that their effect
was to fix rates of shipment, and to validate provisions
in contracts of shipment limiting and fixing the liabili-
ty of the carrier in the case of loss. We cannot agree
with counsel for appellant that the object or effect of
either or both of the statutes was to validate these pro-
visions in contracts of shipment. In other words, the
defendant claims that the contract of shipment as shown
by the bill of lading was that the shipper paid $9.60 to
the carrier to deliver this freight to him at Bessemer;
that a part of this contract limited the liability of the
carrier in case of loss to $7.50; that this rate was fixed
by the statute, and that, therefore, all the other parts

of the contract, including that limiting the liability, were thus fixed by statute, or at least that the statute had the effect to validate the contract, when, but for the statute, it would be invalid, and cites some federal decisions and opinions of the Interstate Commerce Commission in support of the proposition.

It is unnecessary for us to discuss these authorities, or the acts of Congress upon which they are based, to compare or to contrast those statutes or contracts of shipment under consideration with our statutes referred to and the contract in this case, for the reason that we would neither be bound thereby, nor be willing to follow them if in point; this shipment being wholly within the state and made within the state.

We are of the opinion, however, that the statutes referred to did not have the effect, as insisted by appellant, to validate the provisions of bills of lading exempting the carrier from liability for loss, except as to the amount stipulated in the bill of lading. The law as to these provisions in contracts of shipment remains now as it was before, and it is conceded by counsel for the appellant that the carrier would be liable under the law as it existed before these statutes were enacted.

There being no error in the record, the judgment is affirmed.

Affirmed.

DOWDELL, C. J., and SIMPSON and DENSON, JJ., concur.